Manatt, Phelps & Phillips, LLP
SUSAN PAGE WHITE (State Bar No. 137125)
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224
Email: SPWhite@Manatt.com

Attorneys for Plaintiff
Bobrick Washroom Equipment, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT

| | |
|---|---|
| BOBRICK WASHROOM EQUIPMENT, INC., a California corporation,<br><br>           Plaintiff,<br><br>     vs.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,<br><br>           Defendant. | No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

Bobrick Washroom Equipment, Inc. ("Bobrick") alleges as follows:

### NATURE OF THIS ACTION AND RELIEF SOUGHT

1.     In this action, Bobrick seeks damages from its general liability insurer, Travelers Property Casualty Company of America ("Travelers"), for Travelers' breach of its duty to defend under an insurance policy it sold to Bobrick. While Travelers has acknowledged its duty to defend Bobrick in a lawsuit filed against Bobrick, *Scranton Products, Inc. v. Bobrick Washroom Equipment, Inc.*,

**COMPLAINT**

United States District Court, Middle District of Pennsylvania, Case No. 3:14-CV-00853-RDM (the "*Scranton Products* litigation"), Travelers has breached its defense duty by, without limitation: (1) refusing to immediately acknowledge and honor Bobrick's entitlement to independent counsel in accordance with California law (*see* Cal. Civ. Code § 2860); (2) failing and refusing to pay the full amount of defense costs to which Bobrick is entitled for its independent counsel; and (3) failing and refusing to immediately and promptly reimburse Bobrick for its defense counsel fees under California law.  Travelers' refusal to immediately and entirely defend and/or pay defense costs to Bobrick constitutes a breach of the insurance policy.  Bobrick seeks compensatory damages resulting from Travelers' breach of its duty to immediately and entirely pay all attorneys' fees and costs that Bobrick has incurred, or will incur, in the defense of the *Scranton Products* litigation, plus interest.

2.     Bobrick also seeks damages for Travelers' tortious breach of the implied covenant of good faith and fair dealing in its unreasonable failure to defend Bobrick, by initially refusing to acknowledge Bobrick's entitlement to independent counsel, and refusing to immediately and entirely pay Bobrick's defense costs as required under Bobrick's insurance policy and California law.  Bobrick seeks punitive damages and attorneys' fees resulting from Travelers' tortious breach of the implied covenant of good faith and fair dealing.

**THE PARTIES**

3.    Plaintiff Bobrick is a California corporation with its principal place of business in North Hollywood, California.

4.    Bobrick is informed and believes, and on that basis alleges, that Travelers is a Connecticut corporation with its principal place of business at One Tower Square, Hartford, Connecticut.  However, Travelers is authorized to transact, and is transacting, business in the State of California and the County of Los Angeles.

**JURISDICTION AND VENUE**

5.    This court has subject matter jurisdiction of this action under 28 U.S.C. § 1332(a)(1).  Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Bobrick and Travelers; and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.    This court has personal jurisdiction over the parties to this action because: (a) Travelers transacts its insurance business in California, leading to significant and continuing contacts within the State of California; and (b) this lawsuit arises out of an insurance contract sold by Travelers to Bobrick in the State of California.

7.    Venue is proper in this District under 28 U.S.C. § 1391(b), (c) and (d) because Travelers has sufficient contacts to be subject to personal jurisdiction within this District and thus are residents of this District under 28 U.S.C. § 1391(d).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

**COMPLAINT**

# THE INSURANCE POLICY

8.    Bobrick purchased a primary commercial general liability policy no. Y-630-4790A618-TIL-12 from Travelers in effect from at least June 1, 2012 to June 1, 2013, which provides $1 million in limits to Bobrick for "personal and advertising injury" coverage (the "Policy").

9.    The Policy contains no retention or deductible that Bobrick must pay before Travelers must begin to pay its limits under the Policy.

10.    Bobrick paid significant premiums to purchase the Policy.

11.    The Policy provides indemnity coverage and a duty to defend for, among other things, personal and advertising injury liability, in which Travelers promises as follows:

> a.    [Travelers] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. [Travelers] will have the right and duty to defend the insured against any "suit" seeking those damages. . . .

> b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Policy, § I, Coverage B.1).

12.    The Policy defines "Personal and advertising injury" as "personal injury" or "advertising injury." (*Id*., Endorsement CG D4 71 02 09, Amendment of

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT**

Coverage B – Personal and Advertising Injury Liability.)  "Personal injury" is

defined in the Policy, in pertinent part, as follows:

> a.    Means injury, other than "advertising injury", caused by one or more of the following offenses:
>
> * * *
>
> (4)    Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged.

(*Id*.)

13.    The Policy provides that Travelers has a duty to defend against any

"suit" seeking damages for personal and advertising injury.  (*Id*., § I, Coverage

B.1.)  "Suit" is defined in the Policy as a "civil proceeding in which damages

because of . . . 'personal and advertising injury' to which this insurance applies are

alleged." (*Id*., §V.18.)

14.    The Policy further provides that for any payments made for "any 'suit'

against an insured [Travelers] defend[s]," such payments "will not reduce the limits

of insurance."  (*Id*., §I, Supplementary Payments - Coverages A and B, ¶ l.)

## THE *SCRANTON PRODUCTS* LITIGATION

## AND TRAVELERS' BREACHES

15.    On May 2, 2014, Scranton Products filed the *Scranton Products* litigation against Bobrick.  Bobrick tendered the litigation to Travelers on May 6, 2014.  In a June 12, 2014 letter, Travelers agreed to defend Bobrick, subject to a reservation of rights.  The reservations raised by Travelers include that Scranton Products alleged that at least some of Bobrick's conduct was undertaken deliberately and intentionally and that the Policy contains exclusions which preclude coverage for such conduct.  Travelers also cited to at least two exclusions in the Policy as a basis to possibly deny coverage: (a) an exclusion that precludes coverage for "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury,'" and (b) an exclusion that precludes coverage for "'personal injury' or 'advertising injury' arising out of the oral or written publication . . . of material if done by or at the direction of the insured with knowledge of its falsity."  A true and correct copy of Travelers' June 12, 2014 letter is attached hereto as Exhibit A and incorporated herein by reference.

16.    Because Travelers reserved rights in its June 12, 2014 letter based upon intentional act exclusions in the Policy and claimed that Scranton Products was seeking damages against Bobrick based upon allegations of intentional

conduct, an immediate conflict of interest was created.  Travelers nevertheless

initially wrongfully took the position that it had the right to select counsel for

Bobrick:  (Exhibit A at 6.)  Indeed, Travelers stated:

> *Travelers has the right to select and engage qualified counsel within the jurisdiction where the lawsuit is pending.*  We acknowledge your request to engage DLA Piper and are looking into logistics of such an arrangement and will contact you to see if a satisfactory arrangement can be made regarding that firm.

(*Id*. (emphasis added).)

17.    Bobrick responded to Travelers' June 12 letter on September 22, 2014,

asserting its right to independent counsel, and confirming Travelers' agreement to

the selection of DLA Piper as Bobrick's independent counsel.  However, Bobrick

objected to the rates Travelers was seeking to impose on the defense counsel

Bobrick selected.  At no time did Bobrick waive its right to independent counsel.

Bobrick also requested that Travelers provide it with information to support the

hourly rates Travelers was unilaterally seeking to impose, pursuant to Civil Code

§ 2860(c).  A true and correct copy of Bobrick's September 22, 2014 letter is

attached hereto as Exhibit B and incorporated herein by reference.

18.    Travelers failed to even respond to Bobrick's September 22, 2014

letter, requiring Bobrick to again write to Travelers on January 29, 2015.  By then,

Bobrick advised Travelers that it already had incurred $345,935.80 in defense

expenses to date, but that Travelers had not paid a single penny.  Bobrick also

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7

**COMPLAINT**

enclosed summaries of the invoices Bobrick had incurred and paid to date. A true and correct copy of Bobrick's January 29, 2015 letter without its enclosures is attached hereto as Exhibit C and incorporated herein by reference.

19. On February 6, 2015, Travelers responded to Bobrick's January 29 letter, and again wrongly asserted that "[b]ased upon the circumstances of this loss, Travelers has a right to select counsel to defend Bobrick's interests in this litigation." A true and correct copy of Travelers' February 6, 2015 letter is attached hereto as Exhibit D and incorporated herein by reference. Despite the fact that Travelers had reserved rights creating an immediate conflict of interest, which entitled Bobrick to independent counsel, Travelers advised Bobrick that it had two choices – either (a) it could agree to Travelers appointing defense counsel for the *Scranton Products* litigation, or (b) Bobrick could agree to be represented by DLA Piper (defense counsel Bobrick had selected), but only if Bobrick agreed that (i) Travelers would reimburse defense counsel at a per hour rate of $290 for partners, $235 for associates and $110 for paralegal work; and (ii) DLA Piper had to agree to comply with Travelers' Billing Guidelines. (Ex. D at 2-3.) Travelers' demand that Bobrick agree to one of these two choices was wholly improper and a breach of its duty to defend.

20. Given Travelers' wrongful conduct described above, in a March 4, 2015, letter, Bobrick refuted that Travelers had actually retained or paid for defense

counsel for Bobrick as Travelers was obligated to do.  Bobrick also again requested payment for these defense invoices for the *Scranton Products* litigation incurred to date, totaling $640,624.43, which Bobrick enclosed.  Bobrick also renewed its request that Travelers provide it with the information that had been requested in both its September 22, 2014 and January 29, 2015 letters, namely the information that Civil Code § 2860 requires from an insurer to establish that the rates it claims are appropriate are, in fact, appropriate.  A true and correct copy of Bobrick's March 4, 2015 letter without its enclosures is attached hereto as Exhibit E and incorporated herein by reference.

21.    On April 14, 2015, Travelers paid to Bobrick $215,555.85, which was only a portion of the amount owing for the defense fees Bobrick had submitted to date (which totaled $640,624.43).  Not only did Travelers withhold amounts owing based upon its unilaterally imposed reduced rates, but Travelers also (a) arbitrarily reduced the bills an additional 10% (after it already had reduced the fees owing), due to some limited redactions in the bills that were made to protect attorney client privileged communications and attorney work product; and (b) failed to reimburse Bobrick for any of the defense expenses submitted.

22.    In an April 23, 2015 letter, Travelers reiterated to Bobrick its position that Bobrick was not entitled to independent counsel for the *Scranton Products* litigation, stating that: "even if Bobrick were entitled to independent counsel, which

we do not agree that it does, Travelers would only have an obligation to reimburse reasonable and necessary attorney's fees and costs related to the defense of the underlying suit."

23.     On May 8, 2015, because Travelers was not properly honoring Bobrick's entitlement to independent counsel or immediately and entirely defending Bobrick as it was obligated to do, Bobrick made a California Civil Code § 2860 ("§ 2860") arbitration demand on Travelers.  Bobrick advised Travelers that even though Travelers had agreed to defend, Travelers had breached its duty to defend Bobrick.  However, even though this demand was made, as discussed below, Travelers continued to delay payment to Bobrick and failed to fully reimburse Bobrick for its mounting defense fees.  In fact, no arbitration has been scheduled and given Travelers' breach of its duty to defend Bobrick, Travelers is now not entitled to any of the advantages or protections set forth in § 2860.

24.     By letter dated June 3, 2015, counsel for Travelers, Mark Peterson, responded to the May 8, 2015 arbitration demand, by advising that he would be handling the § 2860 arbitration and requested a call to discuss selection of the arbitrator and other preliminary issues regarding the arbitration.

25.     On September 10, 2015, Bobrick sent additional defense fees to Travelers, as an additional $2,147,004.04 in defense fees had been incurred by that date.  Back up invoices for the defense expenses incurred from February through

July 2015 also were included.  Bobrick then sent another defense invoice to Travelers totaling $391,919.32 by letter dated October 15, 2015.  In these two letters, Bobrick also updated Travelers as to the status of the *Scranton Products* litigation.

26.    On December 16, 2015, counsel for Bobrick, Susan Page White, had a telephone call with Mr. Peterson regarding the arbitration demand.  In that call, among other things discussed, Mr. Peterson, albeit belatedly, confirmed Bobrick's entitlement to independent counsel.  Ms. White also requested immediate payment for the defense invoices that had been outstanding for many months, as well as immediate reimbursement for the 10% holdback on the fees Travelers previously had paid (at its unilaterally imposed reduced rate).

27.    On December 21, 2015, Travelers made a partial payment of $500,000 in connection with the outstanding defense invoices, which it characterized as an "advance."  However, before it would send Bobrick even this belated partial payment, Travelers conditioned such payment on Bobrick's agreement that it re-send to Travelers all outstanding invoices and a detailed status report.  Bobrick complied with these conditions despite the fact that Travelers was in breach of its duty to defend, and provided Travelers with another full set of invoices and a status report on December 29, 2015.  Bobrick also included in this submission to Travelers additional defense invoices for payment that had been incurred for

services rendered in September and October 2015 totaling $401,755.73.

28.    On February 12, 2016, Bobrick also forwarded to Travelers two additional defense billings for services incurred in November and December 2015 totaling $435,046.05, as well as expense back up information for charges incurred from June to September 2015 totaling $45,727.56.

29.    After almost two years of letter-writing and the submission of defense costs invoices and other requested materials to Travelers, it unreasonably refused to timely and fully reimburse Bobrick for the defense costs incurred and/or paid by Bobrick in connection with the *Scranton Products* litigation.  Instead, Travelers has unreasonably delayed payments to Bobrick and has failed to reimburse Bobrick for many outstanding defense invoices.  Travelers also has failed to reimburse Bobrick for all of the defense expenses that have been incurred.  Furthermore, Travelers arbitrarily and improperly has withheld 10% from all defense bills in repudiation and breach of its contractual and legal obligations under the Policy.  Instead, Travelers continues to allow Bobrick to suffer the brunt of these fees and costs, which has resulted in substantial prejudice to Bobrick.

## FIRST CAUSE OF ACTION

### (Breach of Contract Regarding the Duty to Defend Against Travelers)

30.    Bobrick realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 29 above.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

12

**COMPLAINT**

31.     Travelers owes Bobrick a defense of the *Scranton Products* litigation if any part of the litigation is potentially covered.  Travelers' defense duty was owed immediately.  Travelers' commitment to defend Bobrick entirely was a significant right afforded to Bobrick under the Policy.  This is a commitment that Travelers wrongfully breached when it: (a) refused to initially and timely acknowledge and honor Bobrick's entitlement to independent counsel in accordance with California law, instead only recently conceding and acknowledging Bobrick's right to independent counsel; (b) failed and refused to pay the full amount of defense costs to which Bobrick is entitled for its independent counsel, instead improperly and arbitrarily reducing the amounts owed and failing to reimburse Bobrick for any of the defense expenses it has incurred and paid, to date; and (c) failed and refused to immediately and promptly reimburse Bobrick for its independent counsel fees under California law.  Travelers' refusal to immediately, fully and entirely defend and/or pay defense costs to Bobrick constitutes material breaches of the Policy.

32.     Bobrick has duly performed and/or complied with all terms and conditions required by the Policy that were not excused by Travelers' breaches and/or other conduct.

33.     As a direct, proximate and foreseeable result of Travelers' breaches of its duty to defend Bobrick, Travelers has deprived Bobrick of the benefit of

insurance coverage for which Bobrick paid substantial premiums.  Bobrick is entitled to recover damages totaling in excess of $3,300,000 (which reflects the more than $4,000,000 in defense fees that have been incurred to date, less the payments from Travelers, which total approximately $700,000), simply for the defense fees and costs that have been incurred to date, as well as damages for the defense fees that are continuing to be, and will be, incurred, plus interest.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith

### and Fair Dealing Against Travelers)

34.     Bobrick realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 33 above.

35.     Implied in the Policy sold by Travelers were covenants that Travelers would act in good faith and deal fairly with its insured, that Travelers would do nothing to interfere with the rights of Bobrick, its insured, to receive the benefits of the Policy, and that Travelers would give at least the same level of consideration to its insured's interests as it gives to its own interests.  Instead of complying with these duties, Travelers has acted in bad faith by, among other things:

a.     Wrongfully, intentionally, unreasonably and/or in bad faith refusing to immediately and timely acknowledge and honor Bobrick's entitlement to independent counsel, instead improperly insisting, until recently,

that Travelers had the right to select counsel for Bobrick and

wrongfully conditioning its consent to Bobrick's counsel;

b.     Wrongfully, intentionally, unreasonably and/or in bad faith refusing to

honor its defense obligations under the Policy;

c.     Wrongfully, intentionally, unreasonably and/or in bad faith failing and

refusing to defend Bobrick in the *Scranton Products* litigation by

failing to immediately and entirely reimburse Bobrick for the defense

fees and costs incurred by its independent counsel;

d.     Wrongfully, intentionally, unreasonably and/or in bad faith promising

that it would defend Bobrick in the *Scranton Products* litigation by

reimbursing Bobrick for the defense fees and costs incurred by its

independent counsel when it had no intention of doing so;

e.     Wrongfully, intentionally, unreasonably and/or in bad faith engaging

in improper delays, failures to perform and delay tactics;

f.     Wrongfully, intentionally, unreasonably and/or in bad faith forcing

Bobrick to incur the expense of filing the present action to recover

benefits owing under the Policy;

g.     Wrongfully, intentionally, unreasonably and/or in bad faith delaying

and withholding defense payments without proper cause;

h.     Wrongfully, intentionally, unreasonably and/or in bad faith placing its

own interests above those of its insured; and

i.     Otherwise acting as alleged above.

36.     In breach of the implied covenant of good faith and fair dealing,

Travelers did the things and committed the acts alleged above for the purpose of

consciously withholding from Bobrick the rights and benefits to which it is entitled

under the Policy.  Travelers' acts are inconsistent with the reasonable expectations

of Bobrick, are contrary to established claims practices and legal requirements, are

contrary to the express terms of Travelers' Policy, and constitute bad faith.

37.     Travelers' conduct is despicable and has been done with a conscious

disregard of the rights of Bobrick, constituting oppression, fraud, and/or malice, in

that Travelers engaged in a series of acts designed to deny the benefits due under its

Policy.  Specifically, Travelers, by acting as alleged above, in light of information,

facts, and relevant law to the contrary, consciously disregarded the rights of

Bobrick and forced it to incur financial losses, which continue to accrue, without

any assistance from Travelers, thereby inflicting financial damage on Bobrick.

Travelers ignored the interests and concerns of Bobrick, with the requisite intent to

injure within the meaning of California Civil Code § 3294.  Therefore, Bobrick is

entitled to recover punitive damages from Travelers in an amount that is sufficient

to punish and make an example of Travelers and in order to deter similar conduct in the future.

38.    Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Bobrick is entitled to recover all attorneys' fees that it reasonably has incurred, and continues to incur, in its efforts to obtain the benefits of insurance that have been, and continue to be, wrongfully and in bad faith withheld by Travelers. When the precise amount of these fees is known, Bobrick will seek leave of court to amend this complaint.

39.    As a direct and proximate result of Travelers' acts, Bobrick has been damaged in an amount in excess of the Court's jurisdictional limits.  The actual amount of damages has not been precisely ascertained yet, but includes the fees and expenses that Bobrick has incurred, and continues to incur, in its defense of the *Scranton Products* litigation, and other damages not yet known or determined. When the precise amount of their damages is known, Bobrick will seek leave to amend this complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Bobrick prays for judgment as follows:

1.    On the First Cause of Action, for damages, plus interest, according to proof at the time of trial, but in excess of the jurisdictional limit;

2.     On the Second Cause of Action:

  a. For damages, plus interest, according to proof at the time of trial;

  b. For reasonable attorneys' fees and expenses incurred in obtaining the benefits due under the Policy, plus interest;

  c. For punitive damages in an amount to be determined at the time of trial;

3.     On all causes of action:

  a. For costs of suit incurred herein;

  b. Interest; and

  c. For such other, further, and/or different relief as may be just and proper.

Dated: February 19, 2016   Manatt, Phelps & Phillips, LLP

          By:  /s/ Susan Page White
           Susan Page White
           Attorneys for Plaintiff
          BOBRICK WASHROOM EQUIPMENT,
          INC.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

18       **COMPLAINT**

1

## **DEMAND FOR JURY TRIAL**

2

3

Plaintiff Bobrick Washroom Equipment, Inc. demands a trial by jury of all

4

issues that may be so tried.

5

6

Dated:    February 19, 2016            Manatt, Phelps & Phillips, LLP

7

8

By:   /s/ Susan Page White

9

Susan Page White
Attorneys for Plaintiff

10

BOBRICK WASHROOM EQUIPMENT, INC.

11

12

13

14

15

16

315851649.2

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT  A

 **TRAVELERS**

One Tower Square 7MS
Hartford, CT 06183

Kevin Kirby  CPCU
Complex Case Specialist
Business Torts Group
(860) 277-6606
Fax (877) 795-3423
kkirby@Travelers.com

June 12, 2014

Mr. Tuan Ho
Bobrick Washroom Equipment, Inc
11611 Hart St
North Hollywood, CA 91605-5882

| | |
|---|---|
| Insured: | Bobrick Washroom Equipment, Inc |
| Policy #: | 630-4790A618 |
| Claim #: | EZG3280 |
| Claim: | Scranton Products, Inc v. Bobrick Washroom Equipment |
| Venue: | US District Court – Middle District of Pennsylvania |
| Case #: | 3:14-CV- 00853-RDM |

Dear Mr. Ho;

This letter will serve as a follow up to our June 4, 2014 conversation concerning the above captioned matter that is the subject of your loss report to Travelers Property Casualty Company of America (hereinafter Travelers) received on May 6, 2014. The submission involves a lawsuit filed on behalf of Scranton Products concerning a situation stemming from a dispute between the parties as to certain fire resistance characteristics with certain of their competing products.

**Allegations**

The complaint, filed on May 2, 2014 alleges that for at least two years, Bobrick has orchestrated a campaign to misrepresent Scranton Product's toilet partitions as being a fire hazard, posing health and safety risks when installed in new construction projects. Specifically, Bobrick is claimed to have contended that Scranton Products does not sell a HDPE toilet partition which is compliant to revisions in the 2009 and 2012 International Building Codes and in particular to the NFPA 286 test that was developed by the National Fire Protection Association. These statements by Bobrick personnel are claimed to be false, misleading and deceptive in nature and were allegedly made to architects and other critical participants in the construction industry, despite Scranton's claim that they provided Bobrick Washroom Equipment with multiple sources of documentation which purportedly established the Scranton products as being compliant. By way of example, in the complaint, Scranton cites Bobrick's January 11, 2013 letter to the president of the Los Angeles Dodgers as indicative of the effort to undermine the sale of Scranton's partitions without any justification in doing so.

1

Count I
Violation of the Lanham Act 15 USC § 1125(a)
This contains allegations as to past and continuing activities that constitute false advertising and false statements both defendants. The statements at issue are claimed to have been deliberate, willful or made in bad faith.

Count II
Violation of the Lanham Act 15 USC § 1125(a)
This count involves allegations of misleading and deceptive advertising regarding Scranton's capabilities to supply the industry with NFPA 286-compliant HDPE toilet partitions. This conduct is claimed to have been deliberate, willful or made in bad faith.

Count III
Common Law Unfair Competition
This count realleges prior paragraphs and cites Bobrick's conduct as being willful, intentional and unprivileged, causing substantial monetary damages.

Count IV
Commercial Disparagement
This count incorporates prior allegations and claims that the false, misleading and deceptive statements about Scranton's products which are allegedly non-compliant to NFPA 286 standards. It further claims that as a result of this conduct, the plaintiff has suffered substantial harm to their reputation.

Count V
Tortious Interference with Existing or Prospective Business Relations
This count realleges prior paragraphs and claims intentional, willful and unprivileged interference with existing or prospective business relations through the associated loss of business opportunities, loss of reputation and loss of goodwill.

The plaintiff seeks injunctive relief including an order enjoining them from further conduct such as is alleged in the complaint, monetary damages, punitive damages ("to punish Bobrick for its willful, intentional, and unprivileged conduct as more fully described in Counts III, IV and V").

**Coverage Analysis**

The above summary of the plaintiff's allegations does not mean that Travelers accepts the allegations as true, but only provides a basis for the forgoing coverage evaluation. The coverage is analyzed utilizing your current policy in effect from June 1, 2012 to June 1, 2013 which is the policy under which the loss was reported. We are aware that this policy is a renewal of a series of primary policies well beyond the time period at issue in this complaint.

2

TRAVELERS 000589

We refer you to CG 00 01 10 01 COMMERCIAL GENERAL LIABILITY COVERAGE FORM. It is made up of two primary coverage parts; Coverage A, which pertains to claims for damages because of "bodily injury" or "property damage" caused by an "occurrence". As this lawsuit does not involve either a claim for "bodily injury" or "property damage" and was not caused by an "occurrence" (i.e. an accident) this coverage part would not apply. Even if the Insuring Agreement was satisfied, which we deny, one or more exclusions to Coverage A may preclude or limit coverage. We will therefore not elaborate on this coverage part, however, should you request a detailed explanation as to the basis for this coverage part not being applicable to your submission, we will be glad to do so.

We now refer you to the section of the policy concerning Coverage B. It states in part:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1.      Insuring Agreement

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.      This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

This policy also includes definitions of a number of terms found in the policy, including:

        3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
        13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
        17.     "Property damage" means:
        a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
        b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
        18.     "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged

It is further modified by a number of endorsements, including CG D4 71 02 09 AMENDMENT OF COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY. That endorsement states, in part:

A.      AMENDMENT OF DEFINITION OF PERSONAL AND ADVERTISING INJURY
        The following replaces the definition of "personal and advertising injury" in the DEFINITIONS Section:
        "Personal and advertising injury" means "personal injury" or "advertising injury".

3

**TRAVELERS 000590**

F.    ADDITIONAL DEFINITIONS
The following is added to the DEFINITIONS Section:

"Advertising injury":

a.    Means injury, other than "personal injury", caused by one or more of the following offenses:

(1)    Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

(2)    Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

(a)    Appropriates a person's name, voice, photograph or likeness;
(b)    Unreasonably places a person in a false light; or
(c)    Discloses information about a person's private life; or
(3)    Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

"Personal injury":

a.    Means injury, other than "advertising injury", caused by one or more of the following offenses:

(1)    False arrest, detention or imprisonment;
(2)    Malicious prosecution;
(3)    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;
(4)    Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or
(5)    Oral or written publication, including publication by electronic means, of material that:
(a)    Appropriates a person's name, voice, photograph or likeness;
(b)    Unreasonably places a person in a false light; or
(c)    Discloses information about a person's private life.

b.    Includes "bodily injury" caused by one or more of the offenses described in Paragraph a. above.
Coverage B contains a number of exclusions to the coverage that it provides, including the following:

2.    Exclusions

This insurance does not apply to:

a.    Knowing Violation Of Rights Of Another
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
b.    Material Published With Knowledge Of Falsity
"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

Some of the exclusions from Coverage B are modified by CG D4 71 02 09 AMENDMENT OF COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY including:

4

TRAVELERS 000591

C.    AMENDMENT OF OTHER EXCLUSIONS

1.    The following replaces Exclusion b., Material Published With Knowledge Of Falsity, in Paragraph 2. of
      SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY
      LIABILITY:

      b.    Material Published With Knowledge Of Falsity
            "Personal injury" or "advertising injury" arising out of oral or written publication, including
            publication by electronic means, of material, if done by or at the direction of the insured with
            knowledge of its falsity.

The allegations reference conduct including false advertising and misleading advertising, neither
of which are enumerated offenses under Coverage B and do not establish an "advertising injury"
as defined.    The complaint does not involve any counts which seek damages because of an
"advertising injury" as it doesn't arise out of an insureds advertising activities and doesn't satisfy
the definition of "advertising injury" cited above.

The counts include a number of allegations which could establish a publication of material that
"slanders or libels a person or organization or disparages a person or organization's goods,
products or services" and therefore may constitute "personal injury" as defined.

Based upon the allegations against Bobrick Washroom Equipment, Inc which could establish a
"personal injury", Travelers has agreed to participate in the defense of this claim, subject to a full
reservation of our rights under the Travelers policies, including the right to decline coverage.

The policy contains a number of exclusions that could serve to restrict or eliminate coverage,
including those listed above.  By way of example, the allegations indicate that the at least some
of the conduct at issue was undertaken deliberately and intentionally.    The policy specifically
excludes such intentional conduct.    Accordingly, Travelers reserves the right to assert the
applicability of any such exclusion, whether or not incorporated by reference into this letter, as is
warranted by the facts that develop.

While the complaint seeks damages which may be payable under your policy, we also wish to
reference the fact that the pending complaint seeks to impose various forms of injunctive relief,
including restrictions as to information disseminated in the marketplace concerning attributes of
Scranton's products.  To the extent that the allegations otherwise an establish a covered loss,
Travelers cannot respond to any claim for injunctive relief and reserves the right to review any
settlement, judgment or verdict to determine the extent to which any findings establish a
potentially covered loss establishing damages payable under the policy.

Our citation of certain portions of the policy is provided for your easy reference, however, the
inclusion of portions of the policy language in this letter does not waive the provisions not
specifically cited nor constitute a relinquishment by Travelers of any other rights or defenses.
Travelers reserves its rights to rely on all the terms, conditions, definitions, exclusions and
reservations contained in the Policies.

5

**TRAVELERS 000592**

Our coverage position is based on the information available to Travelers. If you feel that our analysis contains any errors or in the event that you have additional information to submit, please respond in writing with that information. If additional legal documents are received, such as an Amended Complaint, please forward that information to the undersigned for review. Based upon our acceptance of your tender of defense, Travelers has the right to select and engage qualified counsel within the jurisdiction where the lawsuit is pending, to represent your interests. We acknowledge your request that the DLA Piper firm in Philadelphia, be engaged to defense your company. We are looking into the logistics of such an arrangement and will contact you by phone to see if a satisfactory arrangement can be made involving that firm.

Should you have any questions or would like to discuss this matter further please contact me directly.

Sincerely,

Kevin Kirby

C:    Sandra Rivera, CISR
      Account Manager
      Wilshire Insurance Agency
      835 Wilshire Blvd. 4th Floor
      Los Angeles, CA 90017-2603

6

**TRAVELERS 000593**

# EXHIBIT  B

**DICKSTEIN**SHAPIRO LLP

2049 Century Park East, Suite 700  |  Los Angeles, CA 90067-3109
TEL (310) 772-8300  |  FAX (310) 772-8301  |  dicksteinshapiro.com

September 22, 2014

**kkirby@Travelers.com**

Mr. Kevin Kirby
Complex Case Specialist
Business Torts Group
Travelers
One Tower Square 7MS
Hartford, CT 06183

Re:    Bobrick Washroom Equipment adv. Scranton, Your Claim No. EZG3280I

Dear Mr. Kirby:

We are insurance coverage counsel for Bobrick Washroom Equipment, Inc.  We write regarding the hourly rates that Travelers Property Casualty Company of America has stated it will pay defense counsel in the above matter ($290/hour for partners, $235/hour associates, and $110/hour paralegals).  Bobrick appreciates Travelers agreeing to DLA Piper as Bobrick's independent defense counsel.  However, as you know, Bobrick believes that the rates that Travelers has stated are inappropriately low.  Even though Bobrick has so indicated to Travelers, Travelers has not agreed to pay the rates that DLA Piper is charging, even though Bobrick believes those rates to be fair, reasonable, and appropriate.  Therefore, we request that Travelers provide the following information:

1.  A list of the rates the Insurers have actually paid for the defense of "similar actions" in Philadelphia;

2.  Whether Travelers has ever paid rates in Philadelphia higher than those specified in your response to No. 1;

3.  The names of the firms retained in Philadelphia, the names of specific attorneys at those firms, and actual rates paid;

4.  The list of lawsuits in Philadelphia that Travelers contends are similar to the *Scranton* lawsuit;

5.  An explanation of how Travelers determined that those lawsuits are similar to the *Scranton* lawsuit; and

Los Angeles  |  New York  |  Orange County  |  Silicon Valley  |  Stamford  |  Washington, DC

DOCSLA-122740

**DICKSTEIN**SHAPIRO LLP

Mr. Kevin Kirby
September 22, 2014
Page 2

    6.  An explanation of the factors that Travelers considered in setting the rates it has sought to
        impose here.

We would appreciate receiving this information as soon as reasonably possible.  Meanwhile,
Bobrick continues to reserve all of its rights.

Sincerely,

Kirk A. Pasich
(310) 772-8305 direct dial
(310) 861-0670 direct fax
pasichk@dicksteinshapiro.com

KAP

# EXHIBIT  C

**DICKSTEIN**SHAPIRO LLP

2049 Century Park East, Suite 700 | Los Angeles, CA 90067-3109
TEL (310) 772-8300 | FAX (310) 772-8301 | dicksteinshapiro.com

January 29, 2015

**kkirby@Travelers.com**

Mr. Kevin Kirby
Complex Case Specialist
Business Torts Group
Travelers
One Tower Square 7MS
Hartford, CT 06183

Re:    Bobrick Washroom Equipment adv. Scranton, Your Claim No. EZG3280I

Dear Mr. Kirby:

As you may recall, we are insurance coverage counsel for Bobrick Washroom Equipment, Inc. On September 22, 2014, we sent you a letter regarding the hourly rates that Travelers Property Casualty Company of America has stated it will pay defense counsel in the above matter ($290/hour for partners, $235/hour associates, and $110/hour paralegals). A copy of that letter is attached for your convenience. To date, we have not received a response.

As an update, from the inception of this litigation against Bobrick through October 2014, Bobrick has incurred $345,935.80, in defense fees and costs—none of which has been paid by Travelers. Enclosed are summaries of the invoices Bobrick has paid and incurred. You will note that Carl Hittinger of DLA Piper originally was defending Bobrick. However, Mr. Hittinger is now at Baker Hostetler, where his rates are the same as they were at DLA Piper.

We would like to resolve this rate issue with Travelers as quickly as possible. Please provide us with the requested information within the next 30 days. Meanwhile, Bobrick continues to reserve all of its rights.

Sincerely,

Fiona A. Chaney
(310) 772-8322 direct dial
chaneyf@dicksteinshapiro.com

Enclosures
cc:    Kirk A. Pasich
       Tuan Ho

Los Angeles | New York | Silicon Valley | Stamford | Washington, DC

DOCSLA-124927

# EXHIBIT  D



One Tower Square 7MS
Hartford, CT 06183

Kevin Kirby  CPCU
Claim Professional
Business Torts Group
(860) 277-6606
Fax (877) 795-3423
kkirby@Travelers.com

February 6, 2015

Mr. Tuan Ho
Bobrick Washroom Equipment, Inc.
11611 Hart St.
North Hollywood, CA 91605-5882

| | |
|---|---|
| Insured: | Bobrick Washroom Equipment, Inc. |
| Policy #: | 630-4790A618 |
| Claim #: | EZG3280 |
| Claim: | Scranton Products, Inc. v. Bobrick Washroom Equipment, Inc. |

Dear Mr. Ho;

This letter will address Travelers Property Casualty Company of America's ("Travelers") position relative to the above captioned matter currently pending in the U.S. District Court for the Middle District of Pennsylvania, in Scranton, Pennsylvania.  As you know, on June 12, 2014 Travelers agreed to defend Bobrick Washroom Equipment ("Bobrick") in this litigation, subject to a reservation of Travelers' rights.

Based upon the circumstances of this loss, Travelers has the right to select counsel to defend Bobrick's interests in this litigation.  Travelers takes its defense obligations to its policyholders seriously and conducts a detailed screening process in assembling firms to defend our policyholders in each jurisdiction.   Travelers extends significant indemnity limits to its policyholders and has a common financial interest with its policyholders to protect those limits by using well qualified defense counsel to obtain optimal results in the litigation for the mutual benefit of itself and its insureds.

Upon receipt of this lawsuit, we reviewed our listings for Panel Counsel within this jurisdiction and noted that we have a number of firms with experienced trial lawyers possessing the technical expertise to undertake the defense of this lawsuit (based upon the nature and complexity of this claims at issue).  At the same time, we had a number of discussions with you in which you expressed a desire to have Bobrick defended by the DLA Piper firm in Philadelphia, Pennsylvania.  We are familiar with the firm and with the expertise of its lawyers. As explained at that time, despite the fact that Travelers did not have an obligation to do so, Travelers

indicated that its willingness to agree to allow DLA Piper to defend Bobrick with the caveat that
DLA Piper must comply with the Travelers Billing Guidelines and that we would reimburse the
legal expenses at the rates applicable to our Panel firms in that jurisdiction.

According to our survey of our Panel firms with the requisite expertise needed for to defend the
lawsuit filed against Bobrick, the average rates for the partners in those firms was below $200
per hour. You indicated that those rates were significantly below the rates that you had been
quoted by DLA Piper to defend this action. We had further discussions on the subject of rates
and, at your request, provided the name of one of the firms (Gordon & Rees) on our Panel, a
firm that clearly has the expertise and resources to handle this litigation. Gordon & Rees
defends Travelers' insureds at a partner rate of $290 per hour, which is by far the *highest* rate
among our Panel counsel in that jurisdiction. Prior to providing Gordon & Rees' name to you,
we reviewed the specifics of this loss and internally identified four attorneys in that firm who
were available to immediately step in and provide an aggressive defense of the claims against
Bobrick. We offered to appoint Gordon & Rees to defend the suit, in lieu of DLA Piper.

Despite the information provided, you indicated that it was still Bobrick's preference to utilize
the services of DLA Piper. As an accommodation to you, we were prepared to forego our right
to select counsel and reimburse you for the fees incurred by you for DLA Piper's representation
at Gordon & Rees' rates with Travelers. Our July 7, 2014 letter provided a copy of the Billing
Guidelines that we use and provided examples of some of the requirements contained within
those guidelines for your reference. We have not received any itemized invoices from DLA
Piper, nor have we received any status reports or pleadings from them.

We acknowledge an inquiry from the Dickstein Shapiro firm seeking information concerning our
counsel selection methodology and specific rate information. Their correspondence was not
matched to the file on our end, and unfortunately was not responded to prior to this
correspondence. I apologize for our delay in responding to that inquiry and have copied
Dickstein Shapiro on this correspondence. We are not at liberty to provide specific information
as to our Panel counsel agreements, which are subject to confidentiality requirements with
those firms. We have, on limited occasions, provided specific details as to those billing
arrangements with the permission of the firms in the context of, for example, a rate-based
arbitration proceeding under California Code 2860, with the confidentiality of those
agreements protected from further disclosure by the confidential nature of such arbitration
proceedings. We can, however, assure you that we have conducted a thorough review of both
the rates that we would normally pay for similar litigation in this litigation, as well as the
qualifications of the counsel we would retain to conduct the defense of this litigation.

Travelers remains willing to appoint counsel for the defense of this matter and arrange for the
orderly transfer of this file to such appointed counsel. In the alternative, Travelers remains
willing to agree to a continued retention of DLA Piper for this matter, to review the legal activity
conducted by DLA Piper along with the invoices associated with that work, and to reimburse
DLA Piper for past and future incurred legal fees at a per hour rate of $290 for partners, $235

for associates and $110 for paralegal work. By February 27, 2015, please advise as to which of these two alternatives Bobrick would prefer to select.

Travelers shares Bobrick's desire for the successful defense of this litigation. I hope that this letter clarifies our position concerning the defense-related issues that you have raised with regard to this matter, but if you continue to have any questions as to our position or wish to discuss this matter further, I will be more than happy to do so at your convenience.

Sincerely,

Kevin Kirby, on behalf of
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

cc:     Robert Brachman
        Wilshire Insurance Agency
        835 Wilshire Blvd. 4th Floor
        Los Angeles, CA 90017-2603
        RBrachman@Wilshireins.com

        Kirk A. Pasich Esq
        Dickstein Shapiro
        2049 Century Park East Suite 700
        Los Angeles, CA 90067-3019
        pasichk@dicksteinshapiro.com

# EXHIBIT E

**DICKSTEIN**SHAPIRO LLP

2049 Century Park East, Suite 700  |  Los Angeles, CA 90067-3109
TEL (310) 772-8300  |  FAX (310) 772-8301  |  dicksteinshapiro.com

March 4, 2015

**kkirby@Travelers.com**

Mr. Kevin Kirby
Complex Case Specialist
Business Torts Group
Travelers
One Tower Square 7MS
Hartford, CT 06183

Re:    Bobrick Washroom Equipment adv. Scranton, Your Claim No. EZG3280I

Dear Mr. Kirby:

We have received your February 6, 2015, letter to Bobrick Washroom Equipment, Inc., and write
in response.

**Invoices and Status Report**

As an initial matter, you requested that Bobrick provide itemized invoices and a status report for
*Scranton Products, Inc. v. Bobrick Washroom Equipment, Inc.* lawsuit.  Because Travelers has
agreed to defend under a reservation of rights, but has not actually retained or paid for defense
counsel, in an abundance of caution, Bobrick provides Travelers with redacted invoices (May 5,
2014, through December 31, 2014).  *See Bank of America, N.A. v. Superior Court*, 212 Cal. App.
4th 1076 (2013) (insurer-insured communications not necessarily privileged when insurer has
not retained counsel to defend its insured).

As the enclosed invoices reflect, from the filing of the complaint in May 2014, through mid-
February 2015, lead attorney Carl Hittinger, originally of DLA Piper and now of Baker Hostetler
LLP, has, with the assistance of other attorneys, undertaken the following activities in the
defense of the *Scranton Products* lawsuit on behalf of Bobrick:

1.    Researched, drafted, filed, and served Bobrick's answer to the complaint, and as part of
     that process, considered filing a motion to dismiss the complaint;

2.    Negotiated the Case Management Order, Protective Order, and Scheduling Order with
     opposing counsel;

3.    Participated in case management conferences with the court;

Los Angeles  |  New York  |  Stamford  |  Washington, DC                              DOCSLA-125512

**DICKSTEIN**SHAPIRO**LLP**

Mr. Kevin Kirby
March 4, 2015
Page 2

4.    Researched, interviewed, and selected expert witnesses;

5.    Drafted and propounded document requests and two sets of interrogatories on Scranton Products;

6.    Reviewed, researched, and drafted responses and objections to Scranton Products' two sets of interrogatories and two sets of document requests;

7.    Reviewed Bobrick documents for purposes of assessing responsiveness and privilege, and produced documents in response to Scranton Products' document requests;

8.    Drafted and served third-party subpoenas to entities that served as agents to Scranton Products;

9.    Counseled third-parties regarding document subpoenas served by Scranton Products;

10.    Met and conferred with opposing counsel regarding discovery issues;

11.    Considered, researched, and drafted a motion to compel certain discovery of Scranton Products;

12.    On court order, considered, researched, and drafted a motion to compel discovery regarding Scranton Products' high-density polyethylene ("HDPE") lockers, which are made of the same material as Scranton Products' HDPE toilet partitions;

13.    Considered, researched, and drafted motion to further compel discovery of Scranton Products related to its claimed damages and alleged lost jobs;

14.    Considered, researched, and drafted a motion to modify the Protective Order in light of Scranton Products' misuse of Attorneys Eyes Only designations in discovery;

15.    Reviewed documents produced by Scranton Products for preliminary coding and tracking in order to identify production deficiencies;

16.    Shared relevant documents with Bobrick and its experts to facilitate understanding of key case issues and need for further discovery;

17.    Prepared deposition materials for Koffel Associates and its employees for March 5 and 6, 2015, deposition, which the Baker Hostetler firm will defend; and

**DICKSTEIN**SHAPIRO LLP

Mr. Kevin Kirby
March 4, 2015
Page 3

    18.    Prepare for Rule 30(b)(6) deposition of Scranton Products' records custodian (date TBD).

Oral argument on Bobrick's motion to compel further discovery and motion to modify the Protective Order and extend the initial discovery deadline, is scheduled for March 11, 2015. No trial date has been set in the Scranton Products lawsuit and Mr. Hittinger does not anticipate that trial will take place in 2015.

**Defense Counsel Issues**

You purport in your February 6, 2015, letter to give Bobrick two choices: allow Travelers to appoint defense counsel or agree to reimbursement of Bobrick's selected defense counsel at inappropriately low rates. Neither is acceptable to Bobrick—especially in light of Mr. Hittinger's experience with successfully defending Bobrick against nearly identical claims and in the absence of the information repeatedly requested from Travelers.

    **1.**    **The Lawsuits**

        A.    The *Santana Products* Lawsuit

Although Bobrick provided Travelers with information regarding the Santana claim and Mr. Hittinger's experience during a telephone conference on June 12, 2014, we again summarize that experience because it demonstrates why Travelers' options are unacceptable.

The *Scranton Products* lawsuit is virtually identical to a prior lawsuit filed by Scranton Products' predecessor, Santana Products, in the district court in Scranton, Pennsylvania. In 1996, Santa Products—which has since renamed itself Scranton Products, Inc.—filed a lawsuit against Bobrick and its sales representatives alleging violations of the false advertising provisions of the Lanham Act, 15 U.S.C. §1125(a), tortious interference with prospective contract under Pennsylvania law, and violations of the Sherman Act. *See* Case No. 3:cV-96-1794 (M.D. Pa.) (the "*Santana Products* litigation"). Santana Products alleged that "Bobrick conducted an unlawful marketing campaign to persuade architects and specifiers that HDPE partitions did not meet building code requirements and posed a fire hazard." *See Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 128 (3rd. Cir. 2005) (affirming grant of summary judgment to Bobrick on all of Santana Products' claims). At issue in the *Santana Products* lawsuit was the applicability of the American Society for Testing and Materials ("ASTM") E-84 test to Santana Products' HDPE toilet partitions, and claims by Bobrick and others that Santana Products' HDPE toilet partitions did not meet ASTM E-84 standards. *Id.* 127-28. Bobrick was defended successfully by Mr. Hittinger as its lead counsel, who then was at DLA Piper, during the nine years of that litigation, including in the Court of Appeals for the

**DICKSTEIN**SHAPIRO LLP

Mr. Kevin Kirby
March 4, 2015
Page 4

Third Circuit.  The district court judge in the *Santana Products* lawsuit was Thomas Vanaskie,
who now is a justice on the Third Circuit.

           B.     Commonality Between the *Santana Products* Lawsuit and the *Scranton Products* Lawsuit

The *Scranton Products* lawsuit is a mirror image of the *Santana Products* lawsuit.[1]  Indeed, all
that has changed is Santana Products' name and the applicable test standard, which is now
National Fire Protection Association Test ("NFPA") No. 286.  In the *Scranton Products* lawsuit,
Scranton Products alleges claims under the false advertising provisions of the Lanham Act,
Pennsylvania's tortious interference law, and has also asserted claims for unfair competition and
commercial disparagement.  *See* Complaint at pp. 17-22.  Those claims relate to Bobrick's
alleged

> campaign to scare architects, product specifiers, procurement
> representatives, building owners and others in the construction industry
> into believing that Scranton Products' toilet partitions are fire hazards, are
> unsafe and pose health safety risks if used in building projects across the
> country.  Bobrick's unlawful campaign includes, but is not limited to, its
> literally false statements to architects and procurement representatives that
> Scranton Products does not currently sell a high-density polyethylene,
> HDPE, toilet partition that complies with the 2009 and 2012 International
> Building Codes, and in particular, NFPA 286.

Complaint, ¶¶ 1-2.

Not surprisingly, numerous discovery issues have emerged in which familiarity with the Santana
Products lawsuit has proven helpful.  As one example, Scranton Products initially refused to
provide a list of jobs that it allegedly lost because of, or obtained despite, Bobrick's alleged
interference, which is key to litigating Scranton Products' alleged damages.  In successfully
moving to compel such production, Mr. Hittinger, who litigated the same issue in the *Santana
Products* lawsuit, argued to the court:

> we don't need to re-invent the wheel, we went through this whole exercise
> in the last case and literally spent years and thousands of dollars litigating

---

[1] The district court judge assigned to the *Scranton Products* lawsuit is Robert Mariani, who
replaced Judge Vanaskie after he was elevated to the Third Circuit.

**DICKSTEIN**SHAPIRO LLP

Mr. Kevin Kirby
March 4, 2015
Page 5

> over this lost jobs list, and in the end, what happened was, the parties
> agreed that they would provide the list of lost jobs and the documents that
> supported those lost jobs.

*See* December 12, 2014, Transcript of Discovery Conference at 10:5-11.  As a result, during that conference, the court ordered Scranton Products to provide the same information it had been ordered to provide in the *Santana Products* lawsuit.  *See id.* at 13, 16; December 12, 2014 Order at 3.4 (Dkt. No. 42).

Without question, Mr. Hittinger and his team are best suited to defend Bobrick in the *Scranton Products* lawsuit.  If Bobrick were to agree to replace its counsel—and it will not—that new counsel would be required to spend countless hours trying to "get up to speed," and, largely would be re-inventing the wheel—a wheel which Mr. Hittinger and his team expertly constructed in the *Santana Products* lawsuit—and would ultimately cost Travelers more in defense costs.  Although Travelers has agreed to Mr. Hittinger's retention, it contests paying his and his law firm's hourly rates.  However, on balance, the expertise and prior experience with the *Santana Products* lawsuit Mr. Hittinger and his team bring to the *Scranton Products* lawsuit likely results in a costs savings to Travelers, even compared to other panel counsel who may have lower hourly rates.[2]  Moreover, Mr. Hittinger and his team have a demonstrated record of a full defense in the Santana Products lawsuit.  Although there is no guarantee of the same result here, Mr. Hittinger may spare Bobrick, and therefore Travelers, from payment of any indemnity.

   2.   **Outstanding Information Request**

Travelers declined to provide certain information requested in our September 22, 2014, and January 29, 2015, letters on the grounds that the information regarding Travelers' panel counsel agreements is subject to confidentiality requirements with those firms.  However, this information is precisely the information that Civil Code section 2860 requires from an insurer to establish that the rates it says are appropriate are, in fact, appropriate.  *See* Cal. Civ. Code § 2860(c).  The only information Travelers otherwise provided was the name of only one of its panel counsel firms—Gordon Rees—and the rates it pays that firm.  This provides no further information than Travelers July 7, 2014, letter, fails to satisfy the showing required under section 2860(c), and does nothing to resolve the outstanding rate issue.

---

[2] The *Scranton Products* lawsuit is not a garden-variety business dispute that any panel counsel can defend.  Instead, as illustrated above, it involves technical issues and nuanced areas of law, some of which was created by Mr. Hittinger in the *Santana Products* lawsuit.

**DICKSTEIN**SHAPIRO**LLP**

Mr. Kevin Kirby
March 4, 2015
Page 6

Therefore, we again ask that Travelers provide the following information:

1.  A list of the rates Travelers have actually paid for the defense of "similar actions" in Philadelphia;

2.  Whether Travelers has ever paid rates in Philadelphia higher than those specified in your response to No. 1; [3]

3.  The names of the firms retained in Philadelphia, the names of specific attorneys at those firms, and actual rates paid;

4.  The lists of lawsuits in Philadelphia that Travelers contends are similar to the *Scranton Products* lawsuit;

5.  An explanation of how Travelers determine that those lawsuits are similar to the *Scranton Products* lawsuit; and

6.  An explanation of the factors that Travelers considered in setting the rates it has sought to impose here.

This is information we have requested and received from many insurers over the years—and it clearly is the information that section 2860 specifies in assessing the appropriateness of an insurer's proposed rates. In the spirit of compromise, Bobrick is willing to enter into a confidentiality agreement with Travelers to obtain this information.

Meanwhile, Bobrick has incurred and paid hundreds of thousands of dollars in defense fees and costs with no assistance from Travelers. It is willing to be reasonable to resolve the rate issue, but the lack of payment cannot continue. At a minimum, and without waiving Bobrick's rights to reimbursement of the full rates it has paid, Bobrick requests that Travelers immediately reimburse its outstanding defense fees and costs at Travelers' proposed rates together with interest at the rate of 10% from the date of each invoice. There is simply no basis for Travelers' ongoing failure to pay at least the rates that it contends are appropriate. Indeed, that failure constitutes a clear breach of Travelers' duties.

Please contact me as soon as possible so that we may discuss paths to resolution.

---

[3] This request is broader than the highest rate Travelers has paid to panel counsel (e.g., Gordon Rees).

**DICKSTEIN**SHAPIRO LLP

Mr. Kevin Kirby
March 4, 2015
Page 7

Meanwhile, Bobrick continues to reserve all of its rights.

Sincerely,

Fiona A. Chaney
(310) 772-8305 direct dial
pasichk@dicksteinshapiro.com

Enclosures

cc:    Kirk A. Pasich
       Tuan Ho